## JOSIAH BIGELOW & another *vs.* JOSEPH WINSOR, JR.

The assignees of an insolvent debtor brought a bill in equity, to set aside conveyances of property made by the debtor to the defendants, as made and taken either without con sideration and in fraud of creditors, or by way of unlawful preference, contrary to the insolvent laws, charging the defendants, in the common form, with combining and confederating with divers other persons to the plaintiffs unknown, and praying for relief against the defendants jointly and severally; and the court, after a hearing upon the merits, decreed that the demands, set up by the defendants in their several answers, were justly due them from the insolvent, and that the conveyances of property in payment thereof were not made in violation of the insolvent laws, and dismissed the bill. *Held,* that this decree was a bar to an action of trover by the assignees for the same property against one of the defendants in the suit in equity.

SHAW, C. J. This is an action of trover, brought by the assignees of the estate of Joseph Winsor, Senior, father of the defendant, to recover a large amount of notes, bills and other property, alleged to have been obtained by Joseph Winsor, Jr. for himself and his brother Allen Winsor, immediately before their father went into insolvency, either fraudulently, without consideration, to defeat and defraud creditors, or after the father was in fact insolvent, and contemplated taking the benefit of the insolvent laws, and when the defendant knew, or had reason to believe him insolvent, and with a view to obtain an unjust and fraudulent preference over other creditors, contrary to law.

The defendant, in his specification of defence, amongst other things, relies on a judgment in his favor, in a former suit in equity, brought by the same assignees against himself and Allen Winsor, setting forth the facts of the defendant having obtained of his father, on the eve of insolvency, and having it in contemplation to take the benefit of the insolvent law, the notes and other property sought to be recovered in this suit, and that the defendant and Allen his co-defendant in the suit in equity, knowing or having reason to believe the father insolvent, and taking such property, either without consideration, to conceal it and defraud creditors, or, if any debt was due them, taking the property by way of unlawful preference, in fraud of the insolvent 'aw, and of other creditors.

On the trial, after the plaintiffs had put in their evidence, to sustain the ground that the alleged transfers of property were fraudulent as against creditors, and that so no title passed by it, and the property was in the assignees, by operation of law, the defendant offered a record of the judgment in the equity suit brought against the two by the assignees, setting forth the facts fully, charging the transfers as fraudulent on both grounds, praying an account, a specific restoration of the property, or the proceeds and avails of the same, and for general relief, against the defendants jointly and against each of them severally, dispensing with answers on oath. To this the defendants answered severally, denying all the material facts, denying their knowledge or belief of their father's insolvency until after the transfers and payments in question, explaining circumstances leading to a belief or suspicion of the contrary, and alleging that the whole was done *bona fide.* The bill was amended and a further answer filed by the present defendant. A replication was filed, proofs taken, the cause continued from term to term, and then brought to a hearing.

The record then goes on to state, that "the bill charging the defendants with combining and confederating to wrong and defraud the plaintiffs, as assignees of the estate of said Joseph Winsor, by making unjust claims against said insolvent, and obtaining payments by preferences, contrary to the provisions of the insolvent laws of Massachusetts, all the material allegations thereof being denied, the evidence of the respective parties being duly taken and published, and the cause brought to hearing, and having been fully argued by counsel; it is considered, adjudged and decreed by the court here, that the claims and demands set up by the defendants, in their respective answers, as due from said insolvent, were just and true claims and demands, and that the payment thereof, at the times and in the manner set forth in said answers, and as proved, was not made in violation of the said insolvent laws; and thereupon the said bill, after full hearing upon the merits of the cause, is adjudged and decreed by the court to be dismissed, with costs for the defendants."

That this is a final judgment, upon the merits, that is, upon the matters put in issue, there can be no doubt. Sometimes, indeed, a party plaintiff in equity, who, because he is not prepared with his proofs, or for other reasons, desires not to go into a hearing, but rather to have his bill dismissed, in the nature of a discontinuance or nonsuit in an action at law, may be allowed to do so; but we believe the uniform practice in such case is, to enter " dismissed without prejudice." So, when a decree against the plaintiff in equity proceeds on the ground that he has an adequate remedy at law, the course is to dismiss it, without prejudice to an action at law.

In the case of *Pickett* v. *Loggon,* 14 Ves. 232, where a replication had been filed and proofs taken, and the cause was ready for hearing, but the plaintiff did not appear, so that there was in fact no hearing, Lord Eldon said: " At the same time, if a party thinks proper to bring his cause to a hearing, upon examination of witnesses, publication passed, and the cause capable of being opened, and then makes default, it is very difficult, and would be rather mischievous, to treat such conduct merely as a nonsuit at law."

A plea in bar, stating a dismissal of a former bill, is conclusive against a new bill, if the dismissal was upon hearing, and if that dismissal be not, in direct terms, " without prejudice." Coop. Eq. Pl. 270.

But it is unnecessary to resort to a mere inference; in the present case, the cause was not only at issue and ready for hearing, but was actually heard by the court, and fully presented on both sides; and the decree itself, stating the grounds of the judgment, shows it to be a final judgment on the merits.

The remaining question then is, whether the present action is such, that the same subject matter between the same parties was drawn in question, and embraced in the issue, so that it could be tried and decided in the former case.

One valid judgment, by a court of competent jurisdiction, between the same parties, upon considerations as well of justice as of public policy, is held to be conclusive, except where a review, an appeal, or rehearing in some form, is allowed and regu-

ιated by law.   No man is to be twice vexed with the same con‧ troversy.   *Interest reipublicæ ut finis sit litium.*

To ascertain whether a past judgment is a bar to another suit, we are to consider, first, whether the subject matter of legal controversy, which is proposed to be brought before any court for adjudication, has been drawn in question, and within the issue of a former judicial proceeding, which has terminated in a regular judgment on the merits, so that the whole question may have been determined by that adjudication ; secondly whether the former litigation was between the same parties, in the same right or capacity litigating in the subsequent suit, or their privies respectively, claiming through or under them, and bound and estopped by that which would bind and estop those parties ; and thirdly, whether the former adjudication was had before a court of competent jurisdiction to hear and decide on the whole matter of controversy, embraced in the subsequent suit.

It is no objection that the former suit embraced more subjects of controversy, or more matter than the present ; if the entire subject of the present controversy was embraced in it, it is sufficient, it is *res judicata.*

Nor is it necessary that the parties should be in all respects the same.   If by law a judgment could have been given in that suit for this plaintiff against this defendant, for the present cause of action, it has passed into judgment.   Suppose trespass for assault and battery against five, and verdict and judgment for all the defendants ; then a new suit for the same trespass, by the same plaintiff, against one of the defendants, the former judgment is a good bar.   In actions of tort the cause of action is several as well as joint, and if, upon the evidence, one defendant was chargeable with the trespass, a verdict and judgment might have been rendered against him severally in the first suit, although the other defendants had a verdict.

Nor is it essential, that the two tribunals should have the same jurisdiction in other respects, provided the court was of competent jurisdiction to adjudicate upon the entire matter in controversy, in the subsequent suit.   Whether it be a court of

law or equity, of admiralty or of probate, if in the matter in controversy between the parties, with the same object in view, that of remedy between them, the court had jurisdiction to decide, it is a legal adjudication binding on these parties.

It appears to us, that the judgment relied on is, within all these tests, a bar to the present action.

The present plaintiffs, in their representative capacity as assignees, brought their suit in equity against this defendant and his brother Allen, charging all the same unlawful means, by which the creditors were deprived of a portion of the property of the insolvent, which ought to have come to the assignees, for their use. If the evidence in the case, if any evidence exists growing out of the transaction which is sufficient to charge the defendant in this action, it existed then and would have been sufficient to warrant a decree against him, in that case.

It was insisted in argument for the plaintiff, and evidence was offered to show, that the decree was passed on the ground that Allen Winsor did not personally know of the facts which rendered the acts and conduct of Joseph, Jr. as his agent, fraudulent. It seems to us, that if one claims any title or exemption, on the ground that personally he committed no fraud, because he transacted none of the business, but it was all done in his behalf and by his agent, it is a perfect answer, that if the agent, by whom all the business is done, had such knowledge, as rendered him, his mind and purpose, fraudulent, it rendered the transaction fraudulent and void, and his principal can claim nothing under it. *Locke* v. *Stearns,* 1 Met. 560. Nor is it material how that guilty knowledge was acquired by the agent. Supposing an agent to insure goes to procure insurance, knowing that the vessel is lost, or is in imminent peril, which he does not disclose, and being unknown to the insurer, the policy is made; can the principal claim a loss on the ground that he was absent, had no participation in the transaction, and knew nothing of the facts which were known to his agent?

But suppose it were so, that Allen would have been entitled to a decree in the original suit on the ground that he had no fraudulent purpose, it would have been no reason why this de-

fendant should not be charged, if the evidence and the law were such as to charge him personally and individually.

But it is further urged, that the suit in equity charged and proceeded on the ground of conspiracy, and thus, by analogy to courts of law, there could be no judgment against one. But this is quite a mistake; the former suit not only does not charge conspiracy, as the gist of the complaint; it does not charge conspiracy at all, between the two defendants. It charges that both and each did the acts, on the ground of which relief was sought by a suitable decree, such as those facts, if proved, would warrant. We say it did not charge a conspiracy between the two defendants, to defraud anybody. But after the usual stating part of the bill, the plaintiffs insert the usual formula, common to almost every bill, that they, the said Allen and Joseph, Jr. " combining and confederating with divers *other persons* to the plaintiffs unknown," &c., a form intended, it is believed, to enable plaintiffs in equity to bring in other parties by amendment, should the answers of the defendants, or other matter arising afterwards, render it necessary. But we are not left in doubt, by the decree itself, upon what grounds the judgment was rendered, in favor of both defendants.

The grounds stated and relied on, in the bill, to charge the defendants, were twofold; first, that the notes and claims set up by the defendants, were colorable only and not real debts, that the notes were given without consideration, and set up to cover the property, and to defraud creditors; the other, that if the notes were given for value, the payment was obtained under such circumstances as to render it an unlawful preference within the insolvent laws, and consequently void.

The judgment seems to be adapted to these two grounds of charge. After the ordinary recital, it is adjudged, that the claims and demands set up by the defendants, as due from said insolvent, were just and true claims and demands; and that the payment thereof at the times and in the manner set forth in their answers, and as proved, was not made in violation of the insolvent laws.

It was a judgment upon the case made in the bill, and denied

by the answers, as established or repelled by proof, it was there-fore on the merits, and embraced the whole subject, and in the opinion of the court, must be held a good bar to this action.

*Judgment for the defendants.*

*G. M. Browne & C. M. Ellis,* for the plaintiffs.
*H. Jewell,* for the defendant.